**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

RYAN REESE,

    Plaintiff,

-VS-                                CASE NO.:

DYNAMIC RECOVERY SOLUTIONS, LLC,

    Defendant.

_____ /

## COMPLAINT

COMES NOW Plaintiff, Ryan Reese, by and through the undersigned counsel, and sues Defendant, DYNAMIC RECOVERY SOLUTIONS, LLC, and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.* ("TCPA"), the Florida Consumer Collection Practices Act, Fla. Stat. §559.55 *et seq.* ("FCCPA") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* ("FDCPA").

## INTRODUCTION

1.      The TCPA was enacted to prevent companies like Defendant from invading American citizen's privacy and prevent abusive "robo-calls."

2.      "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct. 740, 745, 181 L.Ed. 2d 881 (2012).

3.      "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner

at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014).

4.      According to the Federal Communications Commission (FCC), "Unwanted calls are far and away the biggest consumer complaint to the FCC with over 200,000 complaints each year – around 60 percent of all the complaints…Some private analyses estimate that U.S. consumers received approximately 2.4 billion robocalls per month in 2016." https://www.fcc.gov/about-fcc/fcc-initiatives/fccs-push-combat-robocalls-spoofing.

## JURISDICTION AND VENUE

5.      This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of attorney fees and costs.

6.      Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7.      Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014)

8.      The alleged violations described herein occurred in Charlotte County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

9.      Plaintiff is a natural person, and citizen of the State of Florida, residing in the city of Port Charlotte, Charlotte County.

10.      Plaintiff is a "consumer" as defined in Florida Statute 559.55(8) and 15 U.S.C. § 1692(a)(3).

11.      Plaintiff is an "alleged debtor."

12.      Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

13.      Defendant is a corporation with its principal place of business located at 135 Interstate Boulevard, Suite #6, Greenville, South Carolina 29616 and which conducts business in the State of Florida through its registered agent, NRAI Service, Inc. located at 1200 South Pine Island Road, Plantation, Florida 33324.

14.      Defendant is a "debt collector" as defined by Florida Statute § 559.55(7) and 15 U.S.C. § 1692(a)(6).

15.      The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute §559.55(6) and U.S.C. § 1692(a)(5).

16.     Defendant called Plaintiff on Plaintiff's cellular telephone approximately one hundred (100) times in an attempt to collect a debt.

17.     Defendant attempted to collect an alleged debt from the Plaintiff by this campaign of telephone calls.

18.     Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

19.     Some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that he knew it was an autodialer because of the vast number of calls he received and because he heard a pause when he answered his phone before a voice came on the line and he received prerecorded messages from Defendant.

20.     Plaintiff believes the calls were made using equipment which has the capacity to store numbers to be called and to dial such numbers automatically.

21.     Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (941) ***-0113, and was the called party and recipient of Defendant's calls.

4

22.     Defendant placed an exorbitant number of automated calls to Plaintiff's cellular telephone (941) ***-0113 in an attempt to reach an individual known only as "Negate Guishion" (sounds like).

23.     Plaintiff does not currently know, nor has ever known, an individual by the name of "Negate Guishon" and has made this known to Defendant during numerous telephone calls.

24.     Plaintiff does not currently have any account or business dealings with Defendant.

25.     Defendant, at no point in time, had Plaintiff's consent to call him on his aforementioned cellular telephone number.

26.     Upon receipt of the calls from Defendant, Plaintiff's caller ID identified the calls were being initiated from, but not limited to, the following telephone number: (786) 796-2677.

27.     On several occasions over the last four (4) years, Plaintiff instructed Defendant's agent(s) to stop calling his cellular telephone, and he is not the person Defendant is looking for.

28.     On or about September 2018, Plaintiff communicated with Defendant from his aforementioned cellular telephone number that he was not the person Defendant was looking for and instructed Defendant's agent to cease calling him.

29.     Despite clearly and unequivocally instructing Defendant to cease calling Plaintiff on his cellular telephone, Defendant continues to place automated calls to Plaintiff.

30.     Each  subsequent  call  Defendant  made  to  Plaintiff's  aforementioned cellular telephone number was done so without the "express consent" of Plaintiff.

31.     Each  subsequent  call  Defendant  made  to  Plaintiff's  aforementioned cellular telephone number was knowing and willful.

32.     In  or  about  October  2018,  Plaintiff  again  answered  a  call  from  the Defendant  and  spoke  to  an  agent/representative  of  Defendant.  Plaintiff  explained  to Defendant's agent/representative that the automated calls to his cellular telephone were harassing, that he was not the person Defendant was looking for, and again demanded that all calls to his cellular telephone cease.

33.     In  or  about  November  2018,  Plaintiff  again  answered  a  call  from  the Defendant  and  spoke  to  an  agent/representative  of  Defendant.  Plaintiff  explained  to Defendant's agent/representative that the automated calls to his cellular telephone were harassing, that he was not the person Defendant was looking for, and again demanded that all calls to his cellular telephone cease.

34.     In  or  about  January  2019,  Plaintiff  again  answered  a  call  from  the Defendant  and  spoke  to  an  agent/representative  of  Defendant.  Plaintiff  explained  to Defendant's agent/representative that the automated calls to his cellular telephone were harassing, that he was not the person Defendant was looking for, and again demanded that all calls to his cellular telephone cease.

35.     In  or  about  March  2019,  Plaintiff  again  answered  a  call  from  the Defendant  and  spoke  to  an  agent/representative  of  Defendant.  Plaintiff  explained  to Defendant's agent/representative that the automated calls to his cellular telephone were

harassing, that he was not the person Defendant was looking for, and again demanded that all calls to his cellular telephone cease.

36.    Plaintiff's numerous conversations with Defendant's agent/representative wherein he demanded a cessation of calls were in vain as Defendant continues to bombard him with an automated call unabated.

37.    Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

38.    Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as it did to the Plaintiff's cellular telephone in this case.

39.    Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as it did to the Plaintiff's cellular telephone in this case, with no way for the consumer, or Defendant, to remove the number.

40.    Defendant's corporate policy is structured as to continue to call individuals like the Plaintiff, despite these individuals explaining to Defendant they wish for the calls to stop.

41.    Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

42.     Defendant has numerous complaints against them across the country asserting that their automatic telephone dialing system continues to call despite being requested to stop.

43.     Defendant has had numerous complaints from consumers against them across the country asking to not be called, however the Defendant continues to call the consumers.

44.     Defendant's corporate policy provided no means for the Plaintiff to have his number removed from the call list.

45.     Defendant has a corporate policy to harass and abuse individuals despite actual knowledge that the called parties do not wish to be called.

46.     None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

47.     Defendant willfully and/or knowingly violated the TCPA with respect to the Plaintiff.

48.     From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

49.     From each and every call without express consent placed by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of the occupation of his cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant's call.

50.     From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of her time. For calls he answered, the time he spent on the call was unnecessary as he had repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

51.     Each and every call placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

52.     Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

53.     Each and every call placed without express consent by Defendant to Plaintiff's cell phone where a voice message was left which occupied space in Plaintiff's phone or network.

54.     Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely his cellular phone and his cellular phone services.

55.     As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affect in a personal and individualized way by stress, anxiety, nervousness, embarrassment, distress and aggravation.

## COUNT I
### (Violation of the TCPA)

56.     Plaintiff fully incorporates and realleges paragraphs 1 through 55 as if fully set forth herein.

57.     Defendant willfully violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that he was not the person Defendant was looking for and that he wished for the calls to stop.

58.     Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FCCPA)

59.     Plaintiff fully incorporates and realleges paragraphs 1 through 55 as if fully set forth herein.

60.     At all times relevant to this action Defendant is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

61.     Defendant has violated Florida Statute §559.72(7) by willfully communicating with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family.

62.     Defendant has violated Florida Statute §559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

63.     Defendant has violated Florida Statute §559.72(9) by attempting to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows the right does not exist.

64.     Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT III
### (Violation of the FDCPA)

65.     Plaintiff fully incorporates and realleges paragraphs 1 through 55 as if fully set forth herein.

66.     At all times relevant to this action Defendant is subject to and must abide by 15 U.S.C. § 1692 *et seq.*

67.     Defendant has violated 15 U.S.C. § 1692(d) by willfully engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

68.     Defendant has violated 15 U.S.C. § 1692(d)(5) by causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

69.     Defendant has violated 15 U.S.C. § 1692(f) by using unfair and unconscionable means to collect or attempt to collect any debt.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

*/s/ John C. Distasio, Esquire*
JOHN C. DISTASIO, ESQUIRE
Florida Bar No.: 096328
MORGAN & MORGAN, TAMPA, P.A.
One Tampa City Center
201 N. Franklin Street, Suite 700
Tampa, FL 33602

Telephone:  (813) 223-5505
Facsimile:   (813) 223-5402
JDistasio@ForThePeople.com
LCrouch@ForThePeople.com
JSherwood@ ForThePeople.com
*Attorney for Plaintiff*